Morning, your honors. My name is John Kaufman. I represent Robert O'Donnell. I am pleased to be here in San Francisco and honored to appear before you. It's cooler than where you came from. Much cooler. And I have always been advised that... In every sense of the word. In every sense of the word. And I've always been advised, although I would like to shine today, that these 15 minutes belong to you. So let me ask you if there's any area that you wish me to dive into, or should I just start on that? Well, I had a question. Has Mr. O'Donnell already completed his six-month residential reentry term? And if so, why is his challenge to this supervised release condition not moved? Well, your honor, he has finished his six-month term. As the court may note from reviewing the file, we petitioned for a stay and the court did not grant that. But there are still issues concerning that, specifically the fact that he's paid out of his pocket about $3,000 or $4,000 for the privilege of staying at the residential treatment center. I think the condition is half of his paycheck goes to the residential center. So is it your contention that if we were to hold that that was an improper condition for one reason or another, that he would be entitled to his money back? Yes, ma'am. I do believe he would be. But there are other issues that render it not moot. The court restarted his supervised release almost a year after he completed it. So the other part of the relief would be to stretch back the date of supervised release not to the 36-month term that the court reissued when it revoked supervised release, but to the date of his original release from the Bureau of Prisons almost 12 months earlier. So that would be another reason that it wouldn't be moot. Is there still an issue about the five days credit? I believe that there is. I don't think that there's any. Well, I remember when I was on the State Court of Appeal, we had an opinion that gave someone one-day credit. That was the whole issue. And so we put at the end, have a nice day. So is this have a nice week for your client? Well, you know, five days is five days. And the judge gave him a sentence of time served. So he did serve the five days. So it's the last issue on the agenda, not one that I was willing to argue here. Well, probably more importantly, moving to that, you make claims of that certain things about how the supervised release revocation was handled. And I know that one of them was that you wanted live testimony of Mr. Sadler and Ms. Tyson. And the probation officer, I wanted live testimony for the disposition hearing, for the modification that we had requested that was not given, and for the disputes in the pre-sentence dispositional report. I wanted evidence on all of those. Excuse me. Mr. O'Donnell wanted evidence on all those issues, and he was denied. Well, now, the Court did consider the letters from Mr. Sadler and Ms. Tyson, correct? At the last minute after the subpoenas were issued, delivered, and served, the judge came down and said, I'm not going to permit an evidentiary hearing. So we scrambled. We did the best thing that we could. We got letters. He only reviewed Dr. Sadler's letter from the bench on the day of the dispositional hearing. Let me just ask you this. It appears to me from my – this is not an area that I'm super familiar with, but it appears to me that there is some discretion on the part of the district court whether to hold a live evidentiary hearing in this type of proceeding, that it's not automatic or required in every instance. Do you disagree with that proposition? I do disagree. And I disagree that the standard in this case – and it's kind of interesting that it's tied in with the Lipkin's case that you heard a little bit earlier – is that everybody's arguing abuse of discretion here. The Court has discretion here. But I think that the proper standard here is a de novo review, because we're talking about due process. Wait, wait, wait, wait. Let me slow you down and move you back a notch, because I thought that the sentencing guidelines at least provide that an evidentiary hearing is not always necessary as long as there is an adequate opportunity to present information in favor of the defense. That's the other case's issue, whether there was that adequate opportunity. But you're now arguing that there's a right to a live evidentiary hearing in every one of these situations. And what is your best authority for that? The best authority I have, which I believe has partial Ninth Circuit precedent, is the Olbowski case out of the Third Circuit. Well, what do you make of Rule 32i? The Court may permit the parties to introduce evidence on the objections to the factual findings. May permit. I think the rule is, and I think both the guidelines and whether you're going to decide whether it was prejudicial or not, is would any of this evidence have assisted the trier of fact in making its ruling in the court proceeding? And the issues here were kind of, well, first of all, when he repeated the facts from the pretrial disposition report, from the probation report, he repeated them wrong. When we talked about modifying conditions of release, we wanted to get to the record that this particular district had no guidelines, no adequate guidelines in handling offenders, and my guy was an Internet sex offender, did something inappropriate in front of a computer. Yeah, we know. Clearly inappropriate. But the district that we had had no way of distinguishing between that type of an offender from an offender that goes to a park, grabs a little girl or a little boy, and does actual physical harm for them, they were both treated the same way. Well, they weren't. You don't get 12 months for grabbing a kid out of the park. That's like a life sentence. I understand. But your client got 12 months for his inappropriate behavior. But the supervised release provisions were the same for that type of offender as it was for my guy. But there was a hearing before the magistrate judge, right? Before there was a ---- There was an evidentiary hearing. Right. Okay. And so are you saying that that did not satisfy due process? Is that your claim? Well, I had some complaints about that hearing, too, but for the most part, it did satisfy due process. Okay. So then it's the modification that you're concerned about. Well, no. No. It's the disposition hearing and the failure to grant any hearing whatsoever concerning the modification that is complete error. I mean, he has to have some kind of hearing on the modification, and he refused to even hold any kind of hearing whatsoever. He just denied that summarily. Well, why wouldn't he? But, all right, one of the things that you wanted was to hear from, I think it was, the person that had some sort of clinical training, a letter from that person, and you want to ---- Dr. Sadler was the person who had been contracted by the department, by the courts, to deal with these people. The guy who am I ---- Well, I'm talking about there was another person with some training that basically knew him personally. Yes. And just said, the guy's not a pedophile, he's not this. And so that was, I mean, that was essentially someone that knew the person from when he was pretty young and said, I trust him around my kids and all of that. Now, why would that be an abuse of discretion to, you know, my mom would even probably come in and say some pretty good things about me, but that doesn't mean that a judge would want to hear any more from my mom. I'm sure, Judge Callahan, that your mom would be a wonderful character witness for you. Except this woman was also a Ph.D. psychologist and had expert testimony that would have assisted the trier of fact. She really was a personal friend, though. With a personal friend that had a title. It's like getting a judge to write you a letter, but really the basis of the relationship is a personal one. There was no professional relationship between the two. She was the mother of one of his best friends, and they had grown up together. And he had grown up with her going in and out of her house. No question about that. The due process implications are important here. You have a right to subpoena witnesses. You have a right to have testimony, live testimony, if that's what you want at these types of hearings. If that testimony at all will assist the trier of fact, the due process requires that the judge consider that testimony. He doesn't have to follow that testimony. He doesn't have to follow what an expert tells him, but he has to listen to it. And in this case, it's particularly strong because the judge indicates, when we did the stay hearing at least, that he had substantial questions to ask these people about what to do. And in the end, without hearing from these people, the judge substituted his own personal beliefs, which I don't believe is permitted, which is clear error. I'd like to reserve a couple of minutes, but I'd also like to talk just very, very briefly. I guess the thrust of the initial argument is you ought to review this de novo and not for abuse of discretion, because it involves clear Fifth and Sixth Amendment rights that were brought up. And I know the cases cited by the government, the two cases, Serrano and Young, use the abuse of discretion standard. That's not the correct standard of the due process. Well, but the problem is what authority do you have for this involving Fifth and Sixth Amendment, because this is not the same as a jury trial. And, I mean, that's clearly set out. All I have is the Olbowski case from the Third Circuit, which Judge Tashima participated in, and that's why I consider it partial Ninth Circuit precedent, about 33 percent. Let me just talk just one second, real quick second, about the association issue. Before you do that, if we were to conclude that the alcohol violation was a sufficient basis for the court to act, why would we have to reach the second violation? You wouldn't, Your Honor. And it's clear that there was a violation of conditions of supervised release with the alcohol. The argument was one beer was de minimis, and in our district, you know, you go through a kind of a hierarchy of offenses for people that abuse substances. You know, first time, shame on you. Second time, head to the rehab place. Third time, you're back in jail. That wasn't followed in this case. It was used. Is that reduced to a local rule or some other thing that's binding on the district court, or is that just the usual hope? No, ma'am, it's not. That's the usual procedure. It's no rule. That's just how it works in the District of Arizona. I'm sure it works in most districts that way, because substance abuse problems are the bane of the supervised release issue. One second on the association issue. Well, is the substance abuse problem different depending on what the offense is? Well, clearly it is. Was there any indication that his committing the offense that put him on this supervised release, that he drank before he? No. It was not substance abuse-related. It was related to depression, issues that he was having with his divorce, with his inability to see his child. They were psychological issues, and that's why we wanted to present the psychological evidence. Let me reserve the last minute and 20 seconds for a quick rebuttal. Thank you. You may do that. I'll hear from another escapee from the heat of Tucson. I appreciate it, Your Honors. I am definitely enjoying this very nice weather that you've ordered up for us. Good morning, Your Honors. Angela Woolridge appearing on behalf of the United States in this matter. The district court does have discretion whether to hold an evidentiary hearing. As already pointed out, it is codified in Rule 32 and also reflected in this Court's previous holdings. And the district court did not abuse its discretion in this case by choosing not to hold an evidentiary hearing and not to hear live testimony. It was completely proper in this case where the evidence that the defendant wanted to present was presented to the Court in another way, in this case through the letters that the Court considered. And defense counsel erroneously stated that the Court only read one of those letters. That isn't true. The transcript actually reflects that the judge read both of the letters that were submitted to him and took the time to read them, not only read them, but cited from them directly and discussed their content directly in responding to defense counsel's arguments and in issuing the disposition in this case. Why isn't he entitled to his five days? The issue with the five days, Your Honor, first of all, there's some discrepancy and it was calculated by the probation department to be four days, which again ---- Well, the record isn't clear whether it's four or five, but if there was an error, the district court can figure out whether it's four or five. But isn't a sentence of time served considered under Ninth Circuit law to be, in fact, the post-conviction sentence of imprisonment, term of imprisonment? Your Honor, I think that the distinction here is pursuant to 18 U.S.C. 3583H, of course, the defendant is entitled to reduction to a sentence imposed upon revocation of the supervisory duty. And here the sentence imposed was that the Court committed him to the custody of the Bureau of Prisons for a term of time served. So the sentence imposed upon revocation was time served. Whether it's four days or five days, for the purpose of this question, is irrelevant. But we generally have held that when a sentence of time served is imposed, the pre-conviction term of custody becomes the term of imprisonment imposed in the final judgment of conviction. Why wouldn't that normal principle apply? I think perhaps the distinction is that he was sentenced to time served instead of four days with credit for time served. In any event, I don't think that there's – That's kind of a – I've sentenced a lot of people. So you're saying if the judge had said you're sentenced to four days and you have credit for those four days, then you wouldn't be making this argument? Is that what you're saying? I don't think so. Well, in any event, I don't know that the defendant wouldn't be given credit for the time served when probation actually calculates when his termination date for his supervised release would be. Do you want to stipulate that? I certainly don't want to. I think you're not going to be. I don't think you're going to be beaten about the head and shoulders for making that concession and oral argument when you get back to your office. Well, I just don't want to be in the position of directing the probation department of what to do. But I certainly don't take issue with the defendant receiving four days off of his supervised release. Four or five days, whichever it turns out to be. Whichever is appropriate. Whichever is accurately determined by the district court. Certainly. Okay. Now, if we – I think Judge Graber asked the question of your learned counsel about if we just think that he drank the one beer, do we have to worry about associating with felons? No, Your Honor, you don't, because one violation is certainly enough for the revocation of supervised release. And so the fact that the – there is no issue to the revocation regarding the alcohol consumption. There's no dispute that the defendant did consume alcohol and that he was ordered to consume no alcohol. That was clear and uncontroverted in his conditions. He admitted to that violation. Then that violation and the court's finding that that violation had occurred is certainly sufficient then for its revocation of term of supervised release. Is there any legal authority for the fact that it was a de minimis violation, that that excuses it? Absolutely not, Your Honor. In fact, the provision is clear to consume no alcohol whatsoever. There is no scale or there's no continuum of how much alcohol constitutes a violation. And in this case, the interesting thing to note, while the defendant spends much of his time saying this is one beer, this is one beer, and looking in the facts and actually reading the transcript, it was a 40-ounce beer. So if we're going to split hairs, it was essentially three-and-a-third beers that he consumed. However, and I think that's probably illustrates the best point of why there isn't some sort of sliding scale over how much a violation is enough. Well, I noticed it said there was a breathalyzer, but I didn't see what the breathalyzer read, because anyone that's read police reports knows that all drunk drivers have only had two beers. Exactly. That's the standard answer. But in any event, Your Honor, yes, to answer your question, no, there is absolutely no authority that you can't revoke revocation upon what the defense characterizes as a de minimis violation. Your Honor, there is no authority that the judge has to listen to the witnesses that the defense proposes to call. In fact, that's actually contrary to both the rules of criminal procedure and this Court's precedent. There is absolutely nothing in the record to substantiate the defendant's claim that the judge had substantial questions for those witnesses that went unanswered. In fact, he even said that I understand what they would have said, I understand their position. He made several comments to show that he considered and understood their position and that he said that he felt that there was no need to hear from them live because he understood through the letters what they had to say. There is absolutely nothing in the record to show, as the defense claimed, that the judge substituted his personal beliefs in this case. In fact, when looking at everything, especially the fact that the defendant's sentence was a downward departure from the policy range, even though there was an upward departure, a reason for an upward departure cited since the defendant had received a downward departure at his initial sentencing, when looking at all of that and taking that into consideration, there certainly can be no error, no prejudice to the defendant based on everything that was before the Court. In fact, the Court took all of that and placed him on supervised release when, under the policy guidelines, he could have sentenced him to three to nine months' prison and he chose not to do so. The halfway house placement that the defendant complains about, which I would concur with the Court that it is moot at this point, was certainly reasonable. What is your response to counsel's assertion that if that placement was improper, he would be entitled to get his money back from the government? I don't know any authority to that. This is a claim that defense raises up for the first time at this point. Well, in fairness to him, it was in answer to a question from the Court about whether this was moot. Certainly. So he raised it because we raised it, so that's not a helpful argument to you. Why is that not something that at least makes it potentially not moot? Because if he was wrongly required to be in this program, would he have at least an arguable claim for his money back? You know, I'm not aware of any authority that would allow him to do that. In any event, I don't believe that he has an arguable claim that it was improper. It's certainly a less onerous condition than the three to nine months prison that would be appropriate under the guidelines or under the policy statement. And certainly there was adequate reason in the record why this halfway house treatment was appropriate. And the judge made a very thorough record of why that was appropriate. The facts of the case reflect that. The defendant had committed violations. He had issues with mental health conditions, with depression, with dealing with his offense. He had several – there were several instances, and it was cited in the supervised release disposition report, that were concerning that the defendant had not accepted his conviction, had not accepted his status as a sex offender, had not agreed to submit to the treatment that was necessary. And the probation officer, as well as the court, recognized that this halfway house placement would be helpful in addressing those issues, as well as addressing the other concerns of sentencing in this case. I'm asking, Ms. Woolridge, is there any authority that in this proceeding we could refund $3,000 to $4,000, or would this gentleman have to proceed by the Tucker Act to make a claim against the United States? I'm not aware, Your Honor, of any authority that would allow – that would allow this Court to refund the money that the defendant paid towards the residential reentry program. So I would – I would suggest to the Court that, for those reasons, that issue is moot. In addition, while the defendant was sentenced to a new term of supervised release, his supervised release did not restart as the defense appeared to claim after the residential reentry program. Those six months in the residential reentry program were part of the 36 months of supervised release. So he's not subject to additional supervised release because of that residential reentry center placement. Your Honors, the – with regard to the motion to modify the conditions of supervised release, the defense never offered any – offered to present any testimony with regard to those issues. The letters that he submitted and the witnesses that he wanted to call were simply to be called to testify to placement in the residential reentry center as a condition of supervised release, not into – not as regard to any of the conditions that the defendant sought to modify. And I think it's important to note that the defendant never raised this issue, never requested to any modification of his supervised release conditions until after he was found to be in noncompliance with those conditions. So I think it was appropriate for the Court to deny that motion, especially when there was a pending disposition based on the defendant's failure to comply with those conditions. Had it been raised in a different posture, perhaps, by a defendant that was fully compliant with his terms of supervised release?  Well, there's nothing that would prevent him, but are you sort of saying it lacks credibility, or? There's nothing to prevent the defendant from petitioning the Court. That if he really found them objectionable, he would have objected to them at the time of sentencing or somewhere before he got in trouble. But he still can do that, right? He certainly can. At any point, he can petition the Court to modify those conditions, whether it be after or before a petition to revoke. However, in this case, the Court did not abuse its discretion by denying those modifications, especially in light of the fact that the defendant had violated several of those conditions and was waiting, or at least two conditions, as the Court found, and was waiting disposition on those conditions. So it certainly was not an abuse of discretion. And furthermore, the defense did not proffer any testimony or ask to call any witnesses with regard to that. So there was no issue there. Furthermore, it's important to point out that the Court actually held a status conference on this issue prior to the disposition in this case. In fact, twice the Court considered the defendant's request. He, the defendant, filed his first request on November 17th of 2008, and the Court held a status conference on November 20th and denied that. The status conference was about proposed modification? Is that where I'm losing your train of thought? That was one of the issues before the Court. The defense had filed the request for proposed modification as well as the request for an evidentiary hearing on the disposition issue to call his witnesses. That issue was addressed at the status conference, and the defendant's motion was denied. The defendant filed a second motion on December 31st of 2008, which was denied by the Court on March 6th of 2008. And only then, I believe it was March 31st, April 1st, and April 2nd, there were the three dates that the defense filed their letters to the Court then in lieu of the testimony. But the Court on two occasions had previously considered the defendant's request and, as we discussed before, had certainly considered all the information that the defendant had proposed to provide to the Court in lieu of testimony. So certainly, the defendant had that ability, had that opportunity to request that evidence, to request the modifications, and the Court did not abuse its discretion in denying both of those requests. The defense argues that there was evidence that would have assisted the trier of facts and the government would disagree with that. Again, as the Court noted, this was information, one of the witnesses was really testifying from a personal relationship with the defendant. The other was testifying, had treated the defendant, was testifying as to a personal opinion based on what would perhaps be the most therapeutic for the defendant's depression, what he felt the best condition would be. Of course, the Court has to consider a lot more than that. The Court has to consider all of the factors of sentencing, the impact to the community, the defendant's rehabilitation, the sex offender issues that were before the Court at this time. So certainly, again, it was not an abuse of the Court's discretion to find that, despite the opinion of these two individuals, the best sentence and the appropriate sentence in the Court's opinion was that residential reentry placement. Thank you, Counsel. Your time has expired. Mr. Crawford, you have some rebuttal remaining. Quickly, Your Honor. The reading was .006. My mother's brisket made in a beer sauce has more alcohol than was recorded on Mr. O'Donnell. The record made by the judge, he misquoted the pre-sentence report when he asked for a hearing. He outlined all these factors. He misquoted the pre-sentence report, and the issues in the pre-sentence report were being disputed, heatedly disputed, and he refused to hold a hearing on that. The modification. He didn't. A status conference is not a hearing. The rule requires a hearing. Whether you look at that de novo. It requires a hearing for modification, but does it require a hearing for refusal to modify? Well, those are two different things, Your Honor. One is he has to hold a hearing. The second issue is he doesn't have to modify. But he has to. Well, the rule doesn't say it that way, though. I think the rule says that a hearing must be held. And when a hearing must be held, it doesn't say you've got to modify because that's up to the judge. Before modifying the conditions, the district court must hold a hearing. If the question is, if the court is not going to, I guess we don't have any cases that say one way or the other, but if the court is, has no interest whatsoever in the potential modification, is simply going to not modify, very happy with what's been done. Does the rule require a hearing? I guess that's for you all to decide. I get paid the big bucks for it. The answer is due process requires the hearing before he makes that decision. And you can see the issues here, there was great contention between probation department and Mr. O'Donnell. So that's what led there. And they wanted him to go to the residential treatment center. I understand. I think we understand your position. Thank you very much. And your time has expired also. Thank you, counsel. Let me just end with a Mark Twain quote about the coldest winter I ever spent was a summer in San Francisco. A summer in San Francisco. Well, that, Mark Twain would feel vindicated for sure this summer. And thank you again for your time. Thank you, counsel. The case just argued is submitted. And, again, we appreciate the helpful arguments of both parties. We'll take about a ten-minute recess.
judges: Graber, Callahan, Bea